775 F.2d 975
 41 UCC Rep.Serv. 1616
 Leon E. LANGEMEIER, Appellee, Rock County Land Company,
v.
NATIONAL OATS COMPANY, INC., Appellant,
Leon E. LANGEMEIER, Appellant, Rock County Land Company,
v.
NATIONAL OATS COMPANY, INC., Appellee.
 Nos. 84-2640, 85-1053.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 9, 1985.
Decided Oct. 18, 1985.
Rehearing Denied Nov. 15, 1985.
 
 Terrence D. O'Hare, Omaha, Neb., for appellant.
 Steven J. Lefler, Omaha, Neb., for appellee.
 Before HEANEY, JOHN R. GIBSON and FAGG, Circuit Judges.
 HEANEY, Circuit Judge.
 
 
 1
 National Oats Company, Inc. (National Oats) appeals from the district court's order awarding Leon Langemeier $5,321.00 in damages arising out of an agreement to grow popcorn. National Oats claims that the district court erred in determining, on its own initiative, that a part of the contract was unconscionable. We affirm.
 
 BACKGROUND
 
 2
 Leon Langemeier and National Oats entered into a written agreement to grow popcorn. The agreement provided that Langemeier would grow 260 acres of popcorn at $.14 a pound for sale to National Oats, and that National Oats would furnish the seed.
 
 
 3
 National Oats informed Langemeier that the popcorn would take 99 days to mature. The company did not disclose, however, that the corn required an additional 20 days in the field to dry down to prevent freeze damage to the kernels.
 
 
 4
 With National Oats' approval, Langemeier planted the seed on May 26 and 27. Due to freezing weather in September and October, the crop was badly damaged. National Oats rejected the crop, as was its perogative pursuant to paragraph 7 of the agreement. Paragraph 7, in pertinent part, provides:
 
 
 5
 7. DELIVERY: GROWER SHALL CONSULT WITH CONTRACTOR OR ITS REPRESENTATIVE PRIOR TO DELIVERY OF THE POPCORN. Contractor, at its discretion, may (1) reject popcorn containing excessive portions of one or more foreign materials or defects [which includes damage due to freezing weather.] * * *
 
 
 6
 Langemeier harvested the crop and sold it to Cornhusker Foods, a company which sells lower grade popcorn. Cornhusker paid $.12 a pound for the 266,050 pounds that were useable, for a total of $31,916.
 
 
 7
 Langemeier commenced this action, claiming that National Oats breached the contract by rejecting an acceptable popcorn crop. National Oats contended that it was not in breach because the popcorn was damaged and the terms of the contract enabled it to reject damaged corn.
 
 
 8
 The district court determined that the popcorn crop was indeed damaged by freezing weather, and that paragraph 7 of the contract authorized National Oats to reject it. The court further determined, however, that "under the circumstances of this case, paragraph 7 is an unconscionable provision and its application must be restricted in the interest of justice." The court reasoned that National Oats' "defective disclosure (as to the time needed for growing) unfairly distorted the bargaining process." The court awarded $5,321 in damages to Langemeier, the difference between the contract price and the amount received.
 
 
 9
 On appeal, National Oats contends: (1) The district court erred in holding paragraph 7 unconscionable; (2) The district erred in raising the issue of unconscionability when this issue was not raised by the parties; (3) The district court erred in awarding damages because damages cannot be collected for an unconscionable contract provision; and (4) The damages awarded are excessive. Langemeier cross appeals, claiming only that the damage award is inadequate.
 
 DISCUSSION
 
 10
 National Oats contends that the district court erred in holding paragraph 7 unconscionable. In assessing whether a particular contract provision is unconscionable, courts generally look for gross inequality in bargaining power, and a misunderstanding or unawareness of the provision in question. Those factors are then examined in light of the totality of the circumstances. Geldermann & Co., Inc. v. Lane Processing, Inc., 527 F.2d 571 (8th Cir.1975).
 
 
 11
 Applying this test to the facts of this case, we conclude that the district court did not err in determining that paragraph 7 was unconscionable. The contract required National Oats to select and supply the popcorn seed. The company represented to Langemeier that the seed it would supply would reach maturity 99 days after planting. The company did not disclose, however, that an additional 20 days was required beyond maturity to field-dry the popcorn:
 
 
 12
 Q. Did you tell him that he would need 128 days from the day of planting to reach a frost-safe period for his plants?
 
 
 13
 A. I didn't specifically state that, no. I did tell him the 96 to 100 days. Talking to him, realizing his background, we were on the same wave length as far as maturity rating of corn, and we knew maturity ratings of corn, and there was a specific dry-down period involved in any type of corn, whether it be corn or popcorn. So we did discuss maturity, but not specifically 128 days, no.
 
 
 14
 Q. You did know that Mr. Langemeier had never raised popcorn before?
 
 
 15
 A. I believe he indicated that at that meeting.
 
 
 16
 Although National Oats argues that Langemeier, an agronomist and agricultural financier, knew or should have known of the dry-down period, the district court determined that he did not know and this finding of fact is not clearly erroneous.
 
 
 17
 National Oats next contends that because neither party raised the issue of unconscionability, it was error for the court to do so sua sponte. Although Langemeier did not plead unconscionability, the testimony above indicates evidence was presented which permitted the court to find that the provision, under the circumstances of this case, was an unconscionable one. Moreover, we are of the opinion that the language of U.C.C. Sec. 2-302 permits a court to raise this issue sua sponte. Section 2-302 provides:
 
 
 18
 (1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.
 
 
 19
 (2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.
 
 
 20
 The plain language of subsection (1) permits the court to raise this issue sua sponte. Moreover, subsection (2) is written in the disjunctive: "[w]hen it is claimed or appears to the court." [Emphasis added.] Thus, the court may raise this issue sua sponte, but subsection (2) mandates that the parties be given a chance to respond.
 
 
 21
 Here National Oats had a reasonable chance to respond. Langemeier testified that he was not aware of the additional time beyond maturity required to dry popcorn. National Oats conceded that Langemeier was not informed of this fact, and did not introduce any evidence which otherwise established that he knew.
 
 
 22
 It appeared from the evidence that the provision may have been unconscionable, and the court determined that it was unconscionable. National Oats had an opportunity to respond to the evidence upon which the finding of unconscionability was made. Moreover, on appeal, National Oats does not point to any convincing evidence which it could have presented, nor does the record reveal the existence of such evidence. Therefore, the substantial rights of National Oats were not affected by the ruling.
 
 
 23
 We now turn to the question of the propriety of the damage award. National Oats claims that because U.C.C. Sec. 2-302 does not authorize an award of damages, the district court erred in awarding Langemeier $5,321. While U.C.C. Sec. 2-302 does not specifically authorize money damages, the section does authorize a court to "enforce the remainder of the contract without the unconscionable clause." Here, the district court did just that. Finding paragraph 7 unconscionable, it enforced the rest of the contract without that clause.
 
 
 24
 Finally, we sustain the district court's award of damages in the sum of $5,321 and therefore reject Langemeier's cross-appeal for an award of $46,183.92.
 
 
 25
 We affirm the judgment of the district court.
 
 
 26
 FAGG, Circuit Judge, dissenting.
 
 
 27
 I respectfully dissent.
 
 
 28
 The contract at issue in this action is a simple, relatively standardized contract used by National with many commercial popcorn growers. Paragraph 6 of this contract expressly provides that "defects" in the popcorn will include "damage due to * * * weather." Paragraph 7 of the contract provides further that National, "at its discretion, may * * * reject popcorn containing excessive portions of one or more * * * defects referred to in paragraph 6." These provisions clearly place the risk of adverse weather on the grower of the popcorn, here Langemeier.
 
 
 29
 Whether the provision in paragraph 7 allowing National to reject popcorn with excessive weather damage is unconscionable under the circumstances of this case is a "[question] of law," Melcher v. Boesch Motor Co., 188 Neb. 522, 198 N.W.2d 57, 61 (1972), focusing on the "circumstances existing at the time of the making of the contract," id. (quoting Neb.U.C.C. Sec. 2-302 comment 1); see also Neb.U.C.C. Sec. 2-302(1); Geldermann & Co. v. Lane Processing, Inc., 527 F.2d 571, 575 (8th Cir.1975) (courts to look to "totality of circumstances surrounding the negotiation and execution of the contract"). Unanticipated events occurring after the creation of the contract are, as a result, irrelevant and cannot be considered. Further, in determining unconscionability, the court must bear in mind that the principle of unconscionability is intended to prevent "oppression and unfair surprise"; it is not intended to disturb the "allocation of risks" resulting from "superior bargaining power." Melcher, 198 N.W.2d at 61 (quoting Neb.U.C.C. Sec. 2-302 comment 1).
 
 
 30
 Applying these principles to the facts of this case, I conclude the provisions in question are not unconscionable. First while inexperienced as a popcorn grower, Langemeier is by no means a newcomer to the business of agriculture. He has significant expertise in agricultural finance. Also, in addition to owning and managing over five thousand acres of row crops, Langemeier needs only to complete his thesis in order to receive his doctorate in agronomy. Further, prior to agreeing to the contract with National, Langemeier had a full opportunity to review the contract, including paragraphs 6 and 7, and understood that these paragraphs placed the risk of adverse weather on him. See Geldermann, 527 F.2d at 575. Finally, unlike Langemeier, the individual retained by him to farm the popcorn was quite experienced in the growing of popcorn.
 
 
 31
 Second, the evidence is clear that based on a fifty year weather average a planting date of May 25 (as required by the contract) should have permitted the crop to grow and mature fully prior to harvest. In fact, the district court specifically found that the growing season anticipated by the contract should have been long enough to allow the popcorn to mature and dry sufficiently. Only the intervening unanticipated weather occurring long after the contract was entered into gave rise to the issues now before the court.
 
 
 32
 Given this factual background, I believe the contract provisions at issue are enforceable. Langemeier has significant agricultural experience. There is no evidence of oppression or gross inequality of bargaining power between the parties to this commercial contract. See Melcher, 198 N.W.2d at 61; Geldermann, 527 F.2d at 575. Also, the provision struck by the court is commercially reasonable and in fact commercially necessary if National is to exercise effective quality control over the popcorn it purchases. Geldermann, 527 F.2d at 576. Finally, it is clear that absent unanticipated adverse weather, the contract provided ample time in which to grow and field dry the popcorn prior to harvest.
 
 
 33
 I conclude the district court misapplied the applicable law to the facts of this case. I would reverse the district court's decision and enforce the contract as written.